IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01450-RBJ

ORP SURGICAL, LLP, a Colorado limited liability company, and
LEE PETRIDES,

   Plaintiffs,

v.

HOWMEDICA OSTEONICS CORP, a New Jersey corporation,

   Defendant.

---

## ORDER on REMAINING MOTIONS

---

The Court here addresses the remaining motions in this case.  The Court has reviewed responses and replies on file, and if responses or replies are not yet due, the Court exercises its authority pursuant to D.C.COLO.LCivR 7(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").  If a party has not yet filed a response or a reply to a particular motion and seriously believes that a response or reply would make a difference, the party can bring it up at the Trial Preparation Conference.

## BACKGROUND

Plaintiffs (collectively "ORP") claim that defendant ("Stryker") wrongfully solicited and hired 14 ORP sales representatives between October 2019 and July 2020.  ORP asserts six claims: (1) corporate raiding; (2) breach of contract; (3) unjust enrichment; (4) intentional interference with existing contractual relationships; (5) intentional interference with prospective

1

business relations; (6) violation of the Colorado Wholesale Sale Representatives Act.  ECF No. 159 (Third Amended Complaint).  Stryker asserts four counterclaims: (1) breach of the Joint Reconstruction SRA Contract – ORP; (2) breach of the Trauma SRA Contract – ORP & Petrides; (3) unfair trade practices – ORP & Petrides; and (4) tortious interference – ORP & Petrides.  ECF No. 171.

## MOTIONS

### A.  <u>Defendant's Motion to Quash, ECF No. 165</u>.

ORP subpoenaed (1) cell phone records possessed by AT&T concerning Adam Jacobs, a Stryker Vice President, for January 1, 2019 through July 1, 2020, and (2) Mr. Jacobs' calendars, day planners, diaries, date books, schedules, and journals from January 2019 to the present. Stryker moved to quash the subpoenas.  AT&T produced the information, but Stryker nevertheless objected to plaintiff's reviewing the information, claiming that it invaded Mr. Jacobs' privacy.  Mr. Jacobs did not produce the subpoenaed calendar-type information, nor did he move to quash the subpoena.

The Special Master found that the motion to quash was moot as to AT&T's production of the phone record and recommended that the Court deny Stryker's alternative motion for a protective order as to that information.  ECF No. 188.  He found that Stryker lacked standing to object to the subpoena of Mr. Jacobs' calendar information and, relatedly, noted an inconsistency between Stryker's position and it's position elsewhere in this case and in a related state court case that calendar information is not in its possession or control but is in the possession, custody, and control of third parties, e.g., such as Mr. Jacobs.  *Id.*  He recommended that the motion be denied.  *Id.*

Stryker filed a timely objection to the Special Master's recommendation, which I have reviewed.  However, I agree entirely with the Special Master's recommendation and the reasons for it provided at ECF No. 188. Therefore, Stryker's motion to quash is denied.  Because Mr. Jacobs did not object, the Court orders that the information be immediately produced.  I expect, of course, that Stryker will also be provided with copies of the AT&T and Jacobs documents.

**B.**   **Plaintiff's Motion to Strike Defendant's "Attorneys Eyes Only" Designation on Text Message, ECF Nos. 184/187.**

ORP objected to Stryker's designation of all text messages produced as "attorney's eyes only."  Stryker responded that conferral would have avoided the motion, and that it had now removed the designation on most of the messages.  ORP replies that Stryker just changed the designation from "attorney's eyes only" to "confidential," which also was not appropriate on most of the messages.  Noting that the Amended Protective order, ECF No.40, provides the procedure for attaching a legend labeling a document as "confidential -- attorney's eyes only" or "confidential," the Special Master ordered that within 21 days Stryker must either notify ORP that, after review, it is satisfied that its legends were appropriately placed or provide ORP with an amended disclosure of the text messages with proper legends.  ECF No. 219 at 3.  Then ORP may review the texts again, an estimated 30,000 or so, and follow up as it deems appropriate.

Noting the practical problems presented, the Special Master encouraged the parties to explore more expeditious and cost-effective procedures.  *Id.* at 4.  There was no recommendation as such.  No objection has been filed.  The Court finds that the motion is now moot.  The Court adds that counsel's labeling of every text message as "attorney's eyes only" or "confidential"

when most of them are likely innocuous and undeserving of such labels was inappropriate and has wasted both parties' money and the time of the Special Master and the Court.

**C. Plaintiff's Amended Motion for Sanctions for Spoliation of Evidence, ECF Nos. 194/196.**

ORP complains that until May 2020 Stryker employees Adam Jacobs and Michael Bonessi deleted or allowed an automatic delete after 30 days function to delete their text messages with ORP's 14 former sales representatives despite litigation hold letters and other reasons why they knew or should have known better. ORP asks the Court to sanction Stryker by presuming that the deleted messages were unfavorable; precluding contrary testimony; permitting ORP to examine Stryker's witnesses about this at trial (while precluding contrary testimony?); and awarding attorney's fees. Stryker responds that it did preserve information after its receipt of ORP's litigation document preservation letter on May 21, 2020, the same date that ORP filed this case; that it had no obligation to preserve information before that date; that the 14 ORP sales representatives could have preserved the same text message; that the loss of texts from Mr. Jacobs' or Mr. Bonessi's personal cell phone cannot be imputed to Stryker (but note Stryker's position in its motion to quash, ECF No. 165 above); and there was no intent or bad faith.

The Special Master found that the relevant time period is December 1, 2019 through April 22, 2020, the date that the 30-day delete function stopped deleting the Jacobs and Bonessi text messages. There were text messages between the 14 sales representative and Jacobs or Bonessi or both during the relevant period. The duty to preserve evidence is triggered when a defendant reasonably anticipates litigation involving the evidence. ECF No. 238 at 2-3.

The Special Master found that Stryker, a large and sophisticated company with experienced lawyers on staff, should have been alerted to the need to preserve evidence at least by preservation demands in letters from ORP's litigation counsel to Stryker's employment counsel dated December 12, 2019 and a letter from ORP's counsel to Stryker's in-house counsel dated January 16, 2020.  If appropriate steps had been taken within a few days after January 16, 2020, the auto delete function would have been turned off and text messages on or after December 20, 2019 would have been preserved.  Stryker had an obligation to preserve Jacobs' and Bonessi's text messages made in their capacity as employees and representatives of Stryker. ORP did not have an obligation to preserve text messages on the phones of its employees who were allegedly being solicited by Stryker in violation of the Sales Representative Agreements, contrary to the interest of ORP.  The Special Master added that during a good deal of the relevant period of time Stryker and its representatives Jacob and Bonessi were aware of the communications and were actively trying to prevent discovery by ORP.  *Id.* at 3-7.

The Special Master further found that there was no evidence before him that any of the deleted text messages could be recovered, although to the extent they could be recovered in time for ORP's use at trial, that would reduce any sanction.  Acknowledging that Stryker's lawyers and employees might not have been aware that the auto delete function was turned on when the preservation issue first arose, a simple request to review the text message communication history would have made the deletion issue obvious.  Accordingly, the Special Master recommended that the Court find that there was a failure to preserve and protect the text messages on the Jacobs and Bonessi cell phones on and after December 20, 2019, and he recommended that the Court "strongly consider the negative inference instruction with regard to such emails."  *Id.* at 8.  He

took no position on whether the Court should permit ORP to cross-examine Stryker's witnesses at trial regarding the loss of the text messages, since that was dependent upon the state of the evidence during the trial. *Id.*

Stryker filed a timely objection in which it began by accusing the Special Master of adopting ORP's arguments. ECF No. 263. Stryker then indicated that the text messages had been recovered from the Sales Representatives' phones and "***all texts between the Sales Reps and Mr. Jacobs and/or Bonessi during the alleged spoliation period are being produced today.***" *Id.* (emphasis in original). But "to the extent certain text messages were not recoverable from Mr. Jacobs and Mr. Bonessi's phones, it was due to a pre-existing auto-delete function on each phone, of which they were unaware." *Id.* at 2. Stryker then turns back to the Special Master's order, arguing that he improperly placed the burden of proof on Stryker, presupposed Stryker's culpability, applied the wrong legal standard regarding the duty to preserve, improperly found that ORP had no duty to preserve, and both factually and legally erred by finding bad-faith intent. *Id.* at 2-3. These positions were further developed over the balance of the objection.

ORP responded to the objection, essentially arguing that the Special Master was spot on. With respect to the claim that the text messages have been recovered, ORP suggests that some of the sales representatives also deleted text messages, but in any event, they didn't have any text messages between Jacobs and Bonessi. ECF No. 269.

The request for a negative inference instruction is moot since the parties have elected to have a bench trial. The Special Master allowed for the possibility that the text messages might be recoverable, and although no evidence of recovery or recoverability was presented to him, he acknowledged that recovery of the messages could affect the spoliation issue. Stryker has

6

represented that all text messages between the 14 sales representatives and the two Stryker representatives have been recovered, and ORP has not convinced me otherwise, at least not yet. I agree with ORP that the reps' phones wouldn't show text messages between Jacobs and Bonessi.  It is unknown whether there were any, and if so, whether they would be of any evidentiary value to either side in this case.

That said, however, I do not disagree with the Special Master's findings.  Stryker is indeed a large and sophisticated company.  It has sophisticated counsel, both in-house and outside.  Stryker's counsel absolutely should have made it their business after receiving ORP's preservation demands in December 2019 and January 2020 to assure that text messages of its employees who were communicating with the 14 sales representatives would be preserved. Their failure to do so was either intentional or grossly negligent, and I am not inclined to find that sophisticated in-house litigation counsel and any outside counsel from whom Stryker was seeking advice as to the ORP matter at the time would make such mistakes.  Had the messages not been recovered, and had this been a jury trial, I would have given the adverse inference instruction.  That itself may be considered to be a sanction of sorts.

The Court will impose no other sanction as such, again assuming for now that the text messages have indeed been recovered and produced.  However, there will be no restrictions on ORP's ability to examine witnesses concerning this subject during the trial.  The motion is granted in part and denied in part.

**D.  Third-Party Defendants and Defendant's Joint Motion to Quash or for Protective Order Re Plaintiff's Untimely Subpoenas, ECF No. 202.**

Stryker argues that the subject subpoenas issued to Adam Jacobs and AT&T, related to certain phone records of Michael Bonessi, were untimely because they were issued on September 7, 2021, more than a month after the August 13, 2021 discovery cutoff.  Stryker notes that these are different subpoenas than the subpoenas addressed in ECF No. 165 and by the Special Master at ECF No. 188.  ORP responds that it sought the information before the discovery cutoff, but after Stryker and Bonessi initially objected, Stryker agreed to produce the records; however, Stryker produced only some of them and claimed it couldn't obtain the records for the period April 3 through April 11, 2020.  Because that is a critical period of time, ORP issued the subject subpoenas.  Stryker reiterates in its reply that ORP could have obtained the information before the discovery cutoff or requested an extension of the discovery deadline.

The Special Master's order appears to confuse some of the relevant dates as between 2020 and 2021.  In substance, however, he agreed with ORP's timeline.  He found that these electronic calendar records were known or should have been known to Stryker since early in the litigation; and that while Stryker, Bonessi and Jacobs might have been within the bounds of the procedural rules, the short delay between the discovery cutoff and the service of the subpoenas would not cause undue prejudice.  He recommended that the motion to quash or for a protective order be denied, and that there should be a prompt and complete response to the subpoenas.  ECF No. 258.

Stryker filed an objection to the Special Master's recommendation.  ECF No. 279.
Having considered the objection, I deny it and accept the recommendation.

**E.  Defendant's Corrected Motion for Partial Summary Judgment, ECF No. 211.**

By way of background, this Court has adopted a procedure in its Practice Standards
requiring parties to file letters of intent and giving the opposing party the opportunity to file a
response letter, before filing a motion for summary judgment.  This procedure, adapted from the
recommendations of the Institute for the Advancement of the Legal System, is designed to give
the Court the opportunity to discourage motions that are unlikely to be successful but that will, if
filed, unnecessarily consume the parties' and the Court's resources.  The Court cannot prevent a
party from filing a motion for summary judgment, but hopefully the parties will consider the
Court's thoughts and advice.

In this case, after considering the parties' letters, the Court issued a minute order in which
it indicated, point blank, that "[t]his case will not be decided on summary judgment for either
party."  ECF No. 201.  The minute order explained that "[t]here is a fundamental fact dispute as
to whether Stryker diverted or solicited plaintiff's employees, and a jury will decide it."  The
Court added that "[i]t might be that one or two individual claims on one side or the other will be
dismissed as a matter of law at some point, but not necessarily on motions for summary
judgment," and the Court urged the parties to "use good judgment to trim off their marginal
claims and defenses without the need for more motion practice."  *Id.*  This order was issued
before the parties agreed to try the case to the Court, which makes summary judgment even less
useful.

9

Notwithstanding the Court's request, Stryker apparently found the filing of a summary judgment motions to be irresistible.  This motion asks the Court to dismiss five of ORP's six claims, leaving only the second claim, for breach of contract, to be tried.  ORP chastises Stryker for ignoring the Court' admonition but then turns an equally deaf ear to the Court's advice that it trim off its own marginal claims.  *See* ECF No. 224.  My how litigation has evolved from the days when lawyers took heed of judges' requests.

Having reviewed the briefs, I am not inclined to find that Colorado would not recognize a claim of corporate raiding or employee piracy.  Indeed, Stryker's argument is somewhat hypocritical since Stryker asserted a similar corporate raiding claim in a different case.  *See Howmedica Osteonics Corp. v. Zimmer, Inc.,* 2012 WL 5556543, at **12-13 (D. N.J. Nov. 14, 2012).  However, it is not at all clear to me how a "corporate raiding" claim would differ in substance from ORP's other claims, particularly its contract and tort claims, which is the same problem Stryker had in the New Jersey case.  In short, this appears to be a marginal claim, at most.  But given that this will be a bench trial, I decline to decide the duplication point outside the context of the evidence at trial.

The tortious interference claims appear to turn on disputed issues of fact.  However, they too seem to be secondary to the contract claim.  I agree with Stryker that unjust enrichment, otherwise known as a contract implied at law, cannot exist when the relationship of the parties is governed by a contract.  ORP's stubborn refusal to let go of this claim is puzzling.  It says it is doing so because "the Court has yet to interpret the contractual prohibition on solicitation and diversion."  But if the Court interprets the contract (including its implied covenant of good faith and fair dealing) as permitting what Stryker allegedly did vis-a-vis the 14 sales representatives,

then how could the Court find that, nevertheless, a contract implied at law permits ORP to recover damages caused by the same conduct?  Perhaps ORP can answer that question, but that will have to come at trial.

If Stryker has refused to pay commissions on sales of Stryker products made by any of the 14 sales representatives made while they were working for ORP, i.e., earned but not yet invoiced, then I wonder what Stryker was thinking.  The Wholesales Representatives statute has an attorney's fee provision.  Stryker cites contract language providing that commissions are owed only if invoiced before the termination of the contract.  ORP counters that the contract provides that termination will not relieve a party from any obligation or liability incurred prior to termination and adds that Stryker, not ORP, invoices the purchaser.  It sounds like there might be an ambiguity in the contract, and if so, the Court would first need to consider any evidence of the parties' intent, which means at trial.  If necessary, the Court would apply the rule that ambiguities are construed against the draftsman.

Stryker's corrected motion for partial summary judgment is denied.

**F.  Defendant's Motion to Exclude the Expert Report of Elaine White, ECF Nos. 228/229.**

When a motion to exclude expert testimony under Rule 702, the parties are entitled to a hearing, indeed an evidentiary hearing, before the witness may testify.  To the best of my knowledge, neither party has yet requested a hearing on this or any other of the Rule 702 motions they have filed, nor have the parties waived their right to a hearing.  However, because this will be a bench trial, the Court can and will, if requested, hold a hearing during the course of the trial

before the witness can testify.  Either way, the Court will not consider testimony that is irrelevant or unreliable within the meaning of Rule 702.

I'll provide my initial impressions here for the parties' consideration.  Ms. White appears to be a typical economic damages expert, i.e., an individual with credentials and experience in accounting and the calculation of lost profits and other economic damages.  Such experts typically base their opinions in part on assumptions as to the underlying facts and then make essentially mathematical calculations.  It is neither surprising nor a ground for exclusion of her testimony that Ms. White relied on or assumed the truth of information provided by Mr. Petrides or by ORP's counsel.  The question is whether that information is accurate and whether those assumptions are reasonable ("garbage in, garbage out").

Stryker obviously can and will challenge the accuracy of the facts she assumes to be true and her omission of other facts.  For example, can and presumably will challenge her opinions by challenging the assumptions that she based them on, and by pointing to other relevant facts that she did not consider.  For example, as the motion notes, Stryker can cite ORP's termination of the trauma contract and the impact of COVID on sales of products for elective surgeries as facts that are potentially relevant to the question of what damages were caused by the alleged poaching of the 14 sales representatives.  Stryker points out that the non-solicitation period was one year, which potentially casts doubt on Ms. White's six-year projection.  These things go to the weight and persuasiveness of her opinions but are not grounds to entirely exclude them.

With respect to her fourth and fifth opinions, Ms. White is not qualified to opine on whether restriction payments or commissions were due.  That is a matter of contract

interpretation.  She may assume that certain restriction payments or commissions were due and then simply do the math.

The motion is denied without prejudice to Stryker's right to request a hearing.

**G.  Defendant's Motion to Strike Opinion Testimony of Plaintiffs Rebuttal Expert Witness J. William Callison, ECF Nos. 230/231.**

The Court need not decide now whether this lawyer may be called as a rebuttal expert. But I note two things.  First, it does not appear to me that the purported testimony of Stryker's expert Ian Rather would be helpful to me as the trier of fact.  The payments made to Mr. Shilling over years should be an easy calculation, probably a stipulation if the parties could agree on something this simple.  Unlike the case of Ms. White, who needs to make assumptions in order to express opinions on lost profits or disgorgement, the only assumption Mr. Rather needs to make is that Mr. Shilling was not entitled to the payments that were made to him.  A Stryker witness can testify to the points summarized at ECF No. 230, page 2.  To have this economist repeat those points in the guise of assumptions would appear to be a waste of time and would add nothing to the value of his testimony.

If that is how the Ratner testimony (or lack of testimony) plays out, then no rebuttal would be appropriate.  In any event, it will not be helpful to the Court to have a lawyer testify about the law.  I will deny the motion to exclude at this time, because it appears to be premature, but it does not appear likely that there will be a useful role for Mr. Callison to play at trial.

**H.  Defendant's Omnibus Motion in Limine, ECF No. 233.**

This significance of this motion is reduced by the decision to try the case to the Court. Also, depending upon the arguments and evidence at trial, a ruling on a motion in limine can be

reconsidered.  At this point I agree with Stryker as to items 1, 2, 3, 5, 6.  I disagree with Stryker as to items 4, 7, 9 (concerning the executive's text).  I cannot provide any ruling without knowing more as to items 5 (if Mr. Wilson testifies, the information arguably relates to his credibility and bias) and 8.  With respect to item 10, ORP's "defense" of its affirmative defenses in its response, including its purported reservation of rights, is unacceptable.  You have been litigating this case for one and one half years.  It is time for you to exercise judgment and decide what affirmative defenses you actually will rely upon at trial (just as I hoped both parties would do as to their multiple claims).  The Court directs the plaintiff to advise the Court and Stryker precisely which specific affirmative defenses (and I do mean affirmative defenses, not denials of allegations as to which Stryker has the burden of proof) plaintiff will actually rely upon and present evidence supporting at trial with a brief description of the factual and legal basis of the affirmative defense; this is to be done before the Trial Preparation Conference.  I might consider any affirmative defense that you list but do not in fact use at trial as having been maintained without "substantial justification."

**I. [Plaintiffs'] Motion in Limine to Preclude Stryker's Damages Expert from Opining on the Weight of Evidence, ECF Nos. 241/244.**

I expressed concerns about Mr. Ratner's opinions in discussing the motion concerning Mr. Callison as a rebuttal witness.  The same rules will apply to Mr. Ratner as apply to Ms. White.  Retained accountants and economists have a limited role, and any effort by either party to invite them to express opinions outside their expertise will not be helpful to the Court and will actually detract from the credibility of the party that hired them.

Thus, for example, it would not be helpful or appropriate for Mr. Rather to testify that Stryker did not solicit the sales representatives, or that the sales representatives did not compete or work within the ORP territories, or that Stryker did not breach any contract, or any of the other bullet point topics listed in plaintiffs' motion ECF No. 241 at 2-3.  I am aware that in its response Stryker takes issue with the wording of those bullet points as compared to the wording of Mr. Rather's report, but my point is not the wording but the substance.  These are not topics as to which Mr. Rather may express opinions.  It is not a matter of invading the province of "the jury."  It is a matter of limiting an expert to opinions within his expertise.

To take just the first example in the response brief, whether plaintiff's summary, "Stryker did not solicit the sales representatives," is or is not a fair summary of Mr. Ratner's words, "ORP's former sales representatives filed Declarations under oath stating they were not solicited by Stryker, and instead, each took affirmative action to seek direct employment with Stryker after the respective Joint Replacement and Trauma SRAs were terminated," ECF No. 270 at 4, is not the point.  Neither version is appropriate for this witness.

I do not today have the time or the patience to go through Mr. Ratner's 46-page report sentence by sentence and tell counsel which sentences are ok, and which are not.  Counsel are fully capable of doing that.  I will say that if at trial counsel try to get Mr. Ratner to testify to liability evidence or opinions that are outside his expertise, it will not work, and the effort will detract from counsel's credibility.  I will not have a problem if Mr. Ratner wishes to criticize Ms. White's work so long as he stays in the role of an accounting expert (and, it goes without saying, within the disclosures that have been made under Rule 26).  He can point out the assumptions on which her opinions are based.  If he can do so within the role of his expertise, he can comment

on why he believes it was inappropriate to rely on certain assumptions.  He can criticize her

failing to consider issues that he believes that an accounting or economics expert should have

considered.  What he cannot do is to try to give credence to Stryker's position on the liability

issues by adding his opinions on those issues or his interpretation of documents that relate to the

liability issues.  As worded, therefore, this motion is granted.

**J.** **[Plaintiffs'] Motion for Order Determining Enforceability of Subpoena for In-**
**Person Trial Testimony of Adam Jacobs and Paul Hoelscher, ECF No. 242.**

A subpoena is enforceable, and apparently ORP can subpoena Mr. Jacobs who lives

within Colorado.  It does not appear that ORP can subpoena Mr. Hoelscher.  *See* motion and

order re ECF No.278 infra.

With respect to Mr. Jacobs, however, and in general, the Court will respect the wishes of

any witness who feels uncomfortable traveling to the courthouse or being in the courthouse or

courtroom due to health and safety concerns related to the pandemic.  We have implemented

measures to minimize the risks, so far with great success, but nevertheless, I will respect the

witness's pandemic-related concerns.  I have taken trial testimony by videoconference many

times during the pandemic, and I am satisfied that it works well and is an acceptable substitute

for live testimony in the circumstances.

In addition, my experience with video teleconference testimony has been sufficiently

positive that I am willing to consider such things as undue cost to a party or a witness, in terms

of time or money, as reasons for permitting testimony in civil cases, especially in a bench trial.

However, if a party is willing and able to have the witness appear in person at trial, then

he or she will have to be available in person for both sides.  In other words, ORP could not

present a witness in person during its case but object to the witnesses being present for live testimony in Stryker's case, and vice versa.  What is good for the goose will be good for the gander.  The motion is granted with the foregoing comments.

**K.  [Plaintiffs'] Motion Seeking Judicial Notice Regarding Conversion of UTC/GMT Time to Mountain Time, ECF No. 243.**

Is it just me, or does this motion, response and reply prove that no request by either of these parties will be agreed by the other?  The Court will take judicial notice of the differences between and among time zones.  I'm not sure that I need a conversion chart, but I suppose it wouldn't hurt.  Grant.

Ps: What I really need is a timeline, for what that's worth.

**L.  Defendant's Motion to Restrict Access, ECF No. 254.**

No response was filed.  The Court does its business in the public and restricts public access only if it is shown that the document contains a legitimate trade secret or confidential item that would likely cause undue harm to a party if it were accessible to the public.  The Court does not have all these documents available to review, nor is it necessary for the Court to devote that amount of time to the task.  If counsel for Stryker agrees as to a specific document that it does contain a trade secret or some confidential information that would likely cause harm to Stryker if the document could be accessed by the public, and further that redaction of the trade secret or confidential portion as opposed to the whole document would be impractical, then the Court will accept that and permit the restricted access.  It does not appear that ORP wishes to weigh in on this, but I would apply the same rule to it.  The motion is granted.

**M.  Stipulated Motion in Limine to Exclude Evidence Regarding Insurance Pursuant to FRE 411, ECF No. 255.**

I spoke too fast.  The parties agree on this one.  Grant.

**N.  [Plaintiffs'] Motion for Remote Testimony of Witnesses Dr. Alejandro Miranda and Dr. Adam Wilson Pursuant to Fed. R. Civ. P. 43(a), ECF No. 268.**

As Stryker's response indicates, the issue isn't whether they can testify remotely. Although the Court does not consider a doctor's time more or less valuable than other people's time, there appears to be no good reason to compel these witnesses to travel to Denver from Steamboat in December to provide brief testimony when testimony by video teleconference would seem to do quite well.  *See also* the Court's ruling on ECF No. 242 above.

The issue is whether they can testify at all.  Having reviewed ORP's reply in support of this motion, ECF No. 281, and ORP's response to Stryker's motion at ECF No. 277, I find that these witnesses were timely disclosed and may testify.  Grant.

**O.  Defendant's Motion to Strike Plaintiffs' Untimely Third Supplemental Disclosures and Bar Trial Witnesses, ECF No. 277.**

As indicated, having reviewed ORP's reply to ECF No. 268 and response to this motion, the motion is denied.

**P.  Defendant's Motion to Quash the Hoelscher Subpoena, ECF No. 278.**

Grant.  If Mr. Hoelscher was not served with a subpoena while in the State of Colorado, there does not appear to be a legal basis for ORP to compel him to come to Colorado to testify. However, the Court will not permit Stryker to refuse to permit Mr. Hoelscher to testify during

plaintiff's case but then call him during Stryker's case.  Also, if he was deposed, ORP can use his deposition in lieu of trial testimony if he will not be testifying for Stryker.

If Stryker does elect to call Mr. Hoelscher, or if not but Stryker elects voluntarily to permit ORP to call him, then he may testify by video teleconference.  *See* order on ECF No. 242.

### ORDER SUMMARY

1. ECF Nos. 241/244, 242, 243, 254, 255, 268, and 278 are GRANTED.

2. ECF Nos. 165, 202, 211, 228/229, 230/231, and 277 are DENIED.

3. ECF Nos. 194/196, and 233 are GRANTED IN PART AND DENIED IN PART.

4. ECF No. 184/187 is MOOT.

DATED this 12th day of November, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge