# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:20-cv-01450-RBJ**

ORP SURGICAL, LLC, a Colorado limited liability company; and
LEE PETRIDES

Plaintiffs

v.

HOWMEDICA OSTEONICS CORP, a New Jersey corporation,

Defendant.

## Special Master Report No. 13
### FINDINGS AND RECOMMENDATION RE: PLAINTIFFS' DISCOVERY DISPUTE STATEMENT AND REQUEST FOR RELIEF REGARDING STRYKER'S DISCOVERY CONDUCT

This matter is before the Special Master pursuant to appointment by the Court on May 19, 2021. Pursuant to the Order of Appointment the Special Master is to address discovery disputes as they arise from time to time during the continuation of this case, and provide the Court with Findings and Recommendations which may be brief, and which will be subject to objection and judicial review within 14 days of the Special Master's Report, if requested by a Party.

Report No. 13 addresses issues raised in Plaintiffs' Discovery Dispute Statement and Request for Relief Regarding Striker's Discovery Conduct filed with the Special Master on October 5, 2021. The Special Master having considered the Discovery Dispute Statement, Stryker's Response thereto filed with both the Special Master and the Court on October 26, 2021 (Doc 256), and OPR's Reply Brief filed

1

with the Special Master on November 8 2021, finds and recommends to the Court as follows.

ORP is seeking sanctions against both Defendant Stryker and its counsel Robyn Marsh. The conduct upon which ORP seeks sanctions are: improper objections and commentary in defending depositions; and delayed and incomplete document disclosure and production.

### A. Deposition Conduct and Commentary, and Disclosures

OPR raises concerns with regard to Stryker's defense of Amy Shackleford's deposition, and the depositions of Jacobs, Hoelscher, and Bonessi.

#### a. Shackleford Deposition

Amy Shackleford deposition took place on July 30, 2021 and was defended by attorney Robyn Marsh. The issues raised concern both the content and frequency of the objections. The deposition started at approximately 9:00 AM and at approximately 11:50 AM (there was a lunch break during that period) the deposition was recessed while OPR's counsel, Ms. Ballard, reached out to the District Court. The District Court was provided with a video clip of a portion of the deposition, including objections by Ms. Marsh, and discussions between Ms. Marsh and Ms. Ballard. Judge Jackson, after viewing the video clip, noted his concerns with what he deemed inappropriate objections and conduct, repeated insertions of bogus objections to form as being disruptive and inappropriate, a perceived lack of civility and professionalism, and perhaps aggressiveness and bullying. Judge Jackson then referred the parties to this Special Master, "if you want a formal opinion on this behavior, and possible sanctions." OPR has now brought this issue, as well as the other issues addressed herein before the Special Master for findings and recommendations.

Before examining the objections and commentary in the Shackleford deposition, as well as the other three depositions, it is helpful to review the applicable standards for objections and commentary by counsel when defending a deposition.

Fed. R. Civ. P. 30 (c)(2) addresses the manner in which objections are to be made during a deposition as follows.

> "An objection at the time of the examination – whether to evidence, the parties conduct, the officer's qualifications, to the manner of taking a deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still precedes; the testimony is taken subject to any objection. An objection must be stated concisely in a non-argumentative and non-suggestive manner. A person may instruct an opponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

As has been sufficiently noted by the parties in their briefing, the Courts have addressed the specifics of the foregoing in numerous cases. Such will not be repeated here.

ORP contends that the objections in question were not stated concisely, were argumentative, were suggestive of coaching, and the instructions not to answer were not for the purposes of preserving the privilege. Like many disclosure and discovery disputes the issues cannot be resolved in a vacuum. The objections must be reviewed in context.

Like the District Court, the Special Master has reviewed the video clip presented, which was also transcribed in Stryker Exhibit A, deposition transcript, page 89 line 16 through page 97 line 4.  ORP also provided two examples of the speaking objections upon which it is basing its contentions, along with those portions of the written transcript.  Stryker provided the entire transcript for review. The Special Master reviewed all of the objections made during the deposition.

Stryker, contending that personal sanctions against Ms. Marsh are not warranted, notes that ORP primarily points to two speaking objections over a seven hour deposition, and notes that ORP "completed the deposition with time to spare and has not identified any information that it was precluded from obtaining." Stryker also faults ORP for not seeking to compel additional deposition time to obtain any missing information. Stryker concludes that ORP suffered no significant prejudice.

ORP responds that the examples provided were just that, examples; and a review of the full transcript will demonstrate the frequency and nature of defense counsel's objections and interruptions.

The Shackleford deposition is 205 pages long, and contains approximately 200 objections to form, 46 of which also contained objections to foundation. While the form objections were aggressive in quantity, and in many instances were unwarranted, neither the form nor foundation objections appear to have interfered with the flow of the testimony or the nature of the answers in any significant way. On a few occasions, the objections contained language to the effect, "to the extent you know, you can answer", "asks for a legal conclusion", "misstates prior testimony", and "asked and answered". These objections are in violation of the Rule as they go beyond the types of objections that are permitted, and they can assist the deponent, or perhaps coach the deponent, in framing their answers. From the context of the words on a written page it does not appear that the latter occurred to any great extent in this deposition. Of course, the Special Master, did not have the benefit of the entire video transcript which might, perhaps, have shed light on any verbal inflections and demeanor.

The major issues were those discussed in OPR's motion to the Special Master. As noted by the District Court in the exchange it examined, such exceeded the objection parameters set forth in the Rule.

### b. Jacobs, Hoelscher and Bonessi depositions

ORP has two primary concerns with regard to these depositions - privilege objections and instructions not to answer the question posed where the question did not seek privileged information, and in other instances where the deponent was instructed not to answer if the response might be "informed by conversations with counsel." ORP contends that these objections in effect coached the deponent to respond with "I don't know" or "I can't answer." The topic of these questions was primarily whether Stryker was paying or reimbursing the sales representatives hired away from OPR, for their defense costs, or otherwise compensating them for the legal fees they may (or have) incurred for claims brought by OPR. ORP noted in the deposition that the Special Master had already determined that such information was not privileged.

Second, a 30(b)(6) deposition notice topic was "Stryker's compensation for the 14 formal reps … including commissions." The designated 30(b)(6) representative when asked about the compensation rate for one of the individuals, Pete Henderson, testified that he had no specific knowledge of the rates under their comp plans, and that he have to go to the comp plans to find that information. The comp plans had not been disclosed. (This issue was the subject of a post deposition finding and recommendation by the Special Master that such plans were to be disclosed and should have been disclosed previously).

Of significant concern is that the 30(b)(6) notice specifically required Stryker to produce a designated representative who would be prepared to discuss Stryker's compensation for the 14 former reps, including their commissions. Payment and indemnification for defense costs, should they be sued by ORP for leaving ORP and joining Stryker, is a form of compensation. ORP complains that it still does not have a clear answer, yes or no, or any other explanation. As part of its sanction request, ORP is asking that the Special Master find and recommend that an answer in the affirmative be deemed admitted and proven.

### c. Delayed and Incomplete Document Productions

ORP contends that four days before the depositions of Stryker executive Jacobs, and Stryker's 30(b)(6) depositions, Stryker supplemented its disclosures "with over 40,000 relevant pages." ORP contends that all of these documents should have been disclosed as part of Stryker's initial Rule 26 disclosures, or in an ongoing fashion much earlier - but were withheld in order to impede ORP's ability to effectively understand and utilize the documents during the depositions. ORP also notes that a significant number of documents (in excess of 35,000 pages) were not provided until after the relevant depositions were concluded. ORP further notes that Stryker contended that some of the documents, which were ultimately produced, did not exist.

The majority of these documents and their production were the subject of prior Special Master findings and recommendations. They include the aforementioned comp plans, text messages receipts for dinners with the 14 former ORP sales representatives, etc.

Stryker counters that it made "extraordinary, good–faith efforts to timely produce all documents despite ORP's refusal to engage in meaningful meet–and–confer or cooperate in resolving reasonable discovery disputes, including refusing to provide search terms for over 200 GB of data, or actually serving subpoenas.

As noted above, many of these issues were previously addressed by the Special Master's findings and recommendations. As has been previously noted, Rule 26 creates an affirmative obligation upon Stryker to search those documents within its custody and control and disclose them both during its initial disclosure, and on an ongoing basis as additional documents are discovered or additional issues come to light. Also, as has been previously noted, where a business and its executives voluntarily and without objection engage in a practice where executives utilize their personal cell phones, calendars, and computers, to conduct corporate business such does not shield those electronic records and data from disclosure and discovery. The rationale behind this is so basic it doesn't require further explanation.

The Special Master does recognize that ORP may bear some responsibility for a portion of the delays related to the search term issue. However, based upon the Special Master's review this issue, Stryker should have done significantly more to facilitate the disclosure rather than impede the progress. It was Stryker's obligation to make the disclosures, not ORP's obligation to ferret them out.

### d. Sanctions

All of the foregoing illustrates Stryker's failure to meet its disclosure and discovery obligations, and in the deposition context its actions impeded, delayed and increased expenses. Much of this has previously been discussed, in part, in the Special Master's findings and recommendations No. 1 through No. 12.  Stryker is correct that when viewed individually its actions may not warrant severe sanctions. However, ORP raises a valid argument, contending that all of Stryker's disclosure and discovery conduct must be viewed collectively, and an appropriate sanction applied.

The Special Master believes that such a sanction is warranted. As has been noted on several occasions, the Stryker entity involved in this litigation is large in and of itself, and separate and apart from the balance of the Stryker family of companies, is sophisticated and experienced, has sophisticated and experienced in-

house lawyers, and has retained equally sophisticated and experienced counsel to represent it in this matter.

First, as noted above, the Special Master agrees with the Court on Ms. Marsh's conduct during the Shackleford deposition. However, having reviewed the deposition transcript with regard to the balance of the objections, the Special Master believes that the reprimand from the Court as well as that noted in these Findings and Recommendations, should be sufficient to alert Ms. Marsh to the need to, at times, take a deep breath pause for a moment before responding as she did. The purpose for discovering disclosures is to facilitate each party's disclosure of the documents it is required to disclose under the Rules, and to allow depositions to proceed unimpeded except as provided by Rule. Further, it is noted that the deposition was being taken over Zoom or a similar video link communication system. The Special Master having participated in hundreds of such videoconferences, including a good number of contested arbitrations and trials, appreciates and notes the problems and frustrations that can arise in responding to situations in that context. Such does not excuse us from meeting our professional obligations, but does put issues that arise in an appropriate context.

Next is ORP's request that Stryker be deemed to have admitted that it agreed with the 14 former ORP sales representatives that it would supply defense costs and provide indemnification if they were sued by ORP. <u>The Special Master, given the totality of the circumstances, finds and recommends that the Court do so</u>.

Finally, as to ORP's request for a monetary sanction, the Special Master believes that such would be appropriate under the totality of the circumstances presented. The problem, however, is to determine the basis for an amount of any such monetary sanction. Noting that not all, but more than a majority of the issues that required the involvement of the Special Master arose from Stryker's failure to meet its discovery and disclosure obligations, the <u>Special Master finds and recommends to the Court that Stryker be ordered to reimburse ORP for two thirds of the fees and costs ORP has had to pay (and will pay) for the Special Master's services</u>.

The Special Master notes that ORP may have incurred additional problems due to the lack of disclosures, and to obtain complete deposition responses. Such, however, as noted by Stryker, cannot be cured through the type of sanctions

requested, but through additional discovery disclosures, which are not available given the current procedural posture of the case. In any event ORP does bear some responsibility in that regard for the timing of its pursuit of the sanctions. The Special Master does not recommend any additional sanctions in this regard.

Submitted this November 15, 2021.

Charles M. Pratt, Special Master